
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, also known as Sound Transit, | No. 10-36061 |
| Plaintiff - Appellee, | D.C. No. 2:10-CV-00749-RBL |
| v. | MEMORANDUM[*] |
| LEVEL 3 COMMUNICATIONS, LLC, a Delaware corporation, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted April 12, 2012
Seattle, Washington

Before: D.W. NELSON, TASHIMA, and CALLAHAN, Circuit Judges.

Level 3 Communications, LLC ("Level 3") appeals the grant of summary

judgment to Central Puget Sound Regional Transit Authority ("Sound Transit") in

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

this diversity action pursuant to Washington State law.  We have jurisdiction

pursuant to 28 U.S.C. § 1291, and we affirm.

The district court concluded correctly that Burlington Northern Santa Fe

Railway Co. ("BNSF") both retained for itself and conveyed to Sound Transit the

benefit of the Level 3 easement.  Section 1 of the Assignment and Assumption of

Third Party Leases/Easements/Licenses ("Assignment"), read together with

Section 11 of the Master Right-of-Way Agreement ("Agreement"), authorizes both

BNSF and Sound Transit to demand relocation of Level 3's facilities at Level 3's

expense for the relocation or placement of railroad tracks.  Because of the unfair

doubling of Level 3's burden pursuant to the Agreement, the district court correctly

deemed Section 1 of the Assignment unenforceable.

As the district court concluded, both BNSF and Sound Transit cannot hold

the benefit of the Level 3 easement simultaneously.  We affirm the district court's

holding that, pursuant to the law of Washington, the benefit of the Level 3

easement ran with the land to Sound Transit.  *Bell v. Gara Fraxa Co.*, 255 P. 144,

146 (Wash. 1927); *Crisp v. VanLaeken*, 122 P.3d 926, 928 (Wash. Ct. App. 2005).

Contrary to Level 3's arguments, BNSF never expressly retained the Level 3

easement.  *See Cogswell v. Cogswell*, 142 P. 655, 657 (Wash. 1914).  Moreover,

Sound Transit's intended use of the property as a commuter line, instead of a

2

freight line, did not render the assignment of the Level 3 easement invalid. Nothing in the Agreement prevented BNSF, or its successors, from converting the property from freight to commuter use, and the change in use did not alter Level 3's burden in a material way. Nor did the Agreement limit the events that can trigger the need to relocate or place railroad tracks.

We uphold the district court's reasonable interpretation of Section 11 of the Agreement, which gives meaning to each ground requiring the relocation of fiber-optic facilities at Level 3's expense. *See Newsom v. Miller*, 258 P.2d 812, 814 (Wash. 1953). The first circumstance requiring Level 3 to bear the costs of relocating its facilities is "the relocation or placement of railroad tracks." Notably absent is a modifier referring to the Railroad or to third parties. The second circumstance in which Level 3 must cover the costs of relocation is "for BNSF's own operational improvements." If the parties had meant to limit the first circumstance to BNSF's benefit alone, they could have done so, just as they did in the second circumstance. In addition, if the first provision were limited exclusively to the relocation or placement of tracks for BNSF's benefit and not for third parties, the second provision would subsume the first provision because both the relocation and placement of railroad tracks are operational improvements.

Finally, the district court correctly found no disputed issue of material fact, because any incidental benefit to the Washington State Department of Transportation is irrelevant. Sound Transit's planned use of the right-of-way as a commuter line required the placement of railroad tracks, thus triggering Section 11(a) of the Agreement. Facts tending to show that Sound Transit demanded the relocation of Level 3's facilities for some other purpose, unrelated to the placement of tracks, would fall within Section 11(b), and, therefore, are not relevant. Section 11(a) controls, and Level 3 must pay the relocation costs.

**AFFIRMED.**