[No. 31554. Department Two. July 26, 1951.]

DRAYTON A. SILVER, *Appellant*, v. H. A. STROHM *et al.*,
*Respondents.*[1]

[1]Reported in 234 P. (2d) 481.

*Donald L. Burcham,* for appellant.

*LaFollette & Savage,* for respondents.

GRADY, J.—This action was instituted by the appellant against respondents and several other defendants to enjoin them from obstructing and preventing his use of a strip of land for road purposes. The defendants other than respondents did not appear. The court made findings of fact and entered a judgment denying an injunction. The court refused to award appellant a right of way over a 15-foot strip of land adjacent to the west side of respondent's property. The respondents will be referred to in the singular.

The theory upon which the action was brought and maintained was that the common grantor, W. T. Hayes, through whom the parties acquired title to their respective tracts of land, granted an easement by implication over a 15-foot strip of land adjacent to the west line of a tract he later conveyed to respondent, as a means of egress from and ingress to the property which he had conveyed to appellant.

The trial court was of the opinion that appellant failed to prove that, at the time the dominant estate was severed from the servient estate by the common grantor, there ex-

isted a reasonable necessity for him to use the disputed strip of land as a roadway for the reason that other routes of travel were available as means of egress from and ingress to the property acquired by him.

On October 30, 1944, W. T. Hayes became the owner of the southwest quarter of the northwest quarter of section 6, township 18, north range 42 E. W. M. (government lot 5), Whitman county, Washington, except the right of way of the O. W. R. & N. Co. The right of way of the railroad company severed from the main portion of lot 5 a small triangular piece of land in the northwest corner thereof. It enters lot 5 from the southwest, curving northeasterly, and passes across the north line of the lot. Lot 5 had adjacent to it, on both the west and north, portions of the platted townsite of St. John. The deed to Hayes also conveyed lot 8, the east half of lot 9, and a strip of land one rod in width on the south side of the west half of lot 9, all in the Second Addition to St. John. This property joined lot 5 on the west. It lies immediately south of the railroad right of way. The lots are much larger than an ordinary city lot. The grantor also conveyed to Hayes a strip of land 15 feet in width extending from the south line of Nob Hill street (plat of St. John) along the west line of section 6 to the railroad right of way. This strip abuts the triangle above referred to in the northwest corner of government lot 5 on its west side, and is the one in controversy.

On account of the curvature of the railroad right of way, the east boundary of the strip is 115 feet in length and the west boundary a few feet longer.. In order to avoid repetition in land descriptions, we shall refer to the part of government lot 5 (which is all of it except the triangle) lying easterly and southerly of the railroad right of way as tract 1; lot 8 and the east half of lot 9 of the plat of St. John as tract 2; the strip of land one rod in width, being the south 16½ feet of the west half of lot 9, as tract 3; the small triangle northerly and westerly of the railroad right of way, and in the northwest corner of government lot 5, as tract 4, and the 15-foot strip along the west side of tract 4 as tract 5.

· Prior to the time Hayes acquired the foregoing tracts of land, tract 3 had been used as a road serving tracts 1 and 2. The railroad company had constructed a crossing between tracts 2 and 5. Tract 5 had also been used as a road serving tracts 1 and 2. Hayes had traveled over tract 3, but when he acquired tracts 1 and 2, he put some gravel on tract 5 and used it as an outlet instead of tract 3. He testified that tract 5 furnished a more direct route to St. John, and was a better road than tract 3, the latter being low, and muddy in the winter time. He also stated that if tract 3 was graded and enough gravel used, it would make a usable road. The court made a finding, to which no error is assigned, that Margin street in St. John also furnished an outlet from appellant's property. This street extends northerly from about midway of the north boundary of tract 1.

On July 30, 1945, Hayes conveyed to appellant tracts 2 and 3 and a small part of tract 1 adjacent on the east to tract 2. On March 7, 1947, Hayes conveyed to appellant all of tract 1. When appellant first sought to purchase the property, he traveled over tract 3. After the purchase was made, appellant closed the gate across tract 3 and made use of tract 5. He put some gravel on tract 5 the winter before this action was brought. On January 10, 1947, appellant conveyed tract 3 to Albert W. Bafus.

On August 5, 1946, Hayes conveyed tract 4 to Robert E. Lindley. On the same date, he executed another deed to Lindley conveying tracts 4 and 5, but described the latter as being 22 feet in width. On January 12, 1948, Hayes executed to Lindley a correction deed to tracts 4 and 5. Respondents acquired title to tracts 4 and 5 in 1949 through a successor of Lindley. The appellant resides on tract 2 and respondent on tract 4.

The appellant introduced in evidence a plat which he had drawn to illustrate his testimony. In testifying, he made general references to the plat, and, while they were no doubt plain to the trial judge, they are not made so in the printed record. In the statement of facts, reference is made to a plat of the town of St. John, and it appears that this was

exhibited to the trial judge. No copy of the plat was introduced in evidence. No assignments of error are directed to the findings of fact made by the court. We have made our factual statement from a consideration of the statement of facts, the findings of the court, and the deeds introduced and marked as exhibits.

We have decided that in order to establish an easement by implication in favor of a dominant estate, three essential elements must be made to appear: (1) unity of title and subsequent separation by grant of the dominant estate; (2) apparent and continuous user, and (3) the easement must be reasonably necessary to the proper enjoyment of the dominant estate. *Rogers v. Cation*, 9 Wn. (2d) 369, 115 P. (2d) 702; *Evich v. Kovacevich*, 33 Wn. (2d) 151, 204 P. (2d) 839; *Wreggitt v. Porterfield*, 36 Wn. (2d) 638, 219 P. (2d) 589, and cases cited below.

The record supports a conclusion that the first two elements mentioned above existed at the time appellant purchased from Hayes tracts 3, 2, and a part of government lot 5. The first element did not exist on January 10, 1947, when the remainder of tract 1 (government lot 5) was conveyed to appellant, because the servient estate (tract 5) had been conveyed to appellant. The trial court concluded the third element did not exist at either time. We are in accord with this view. When Hayes conveyed tract 2 to appellant, he also by the same deed conveyed to him a strip of land 16½ feet in width (tract 3) taken from the south side of adjoining property, which had been used as a road connecting tract 2 with one of the platted streets of St. John. We must assume that, if the parties intended that notwithstanding the existence of such road it was to be abandoned and not used for such purpose, and that appellant's egress from and ingress to his property was to be across the railroad track and over property retained by Hayes, the deed would have also included an easement therefor.

If the deed to appellant had not included the 16½-foot strip (tract 3), it might be inferred that the parties intended that ingress and egress to and from the property

conveyed would be over tract 5. The conveyance of tract 3, even though some labor and expense would be necessary to make it a more suitable way of travel, did away with any reasonable necessity to use tract 5 as a road to or from appellant's property. The fact that it would be more convenient to use that road than to use the other one is not sufficient to establish that such use was reasonably necessary to the proper enjoyment of appellant's property. We are at a loss to understand why appellant parted with tract 3. Being without such outlet cannot now aid him in his claim to an easement by implication over tract 5.

The subject of implied easement in situations similar to the one presented by this case has received much consideration from courts and text writers. We have considered the subject so many times that we think it unnecessary to cite cases from other jurisdictions. In addition to our cases above cited, reference may be made to: *Malsch v. Waggoner*, 62 Wash. 470, 114 Pac. 446 (private road); *Roe v. Walsh*, 76 Wash. 148, 135 Pac. 1031, 136 Pac. 1146 (alleyway used for the purpose of delivering fuel); *Bailey v. Hennessey*, 112 Wash. 45, 191 Pac. 863 (driveway serving two adjoining lots); *Berlin v. Robbins*, 180 Wash. 176, 38 P. (2d) 1047 (pipe line carrying water for domestic and farm purposes); *Bushy v. Weldon*, 30 Wn. (2d) 266, 191 P. (2d) 302 (driveway).

Reasonable necessity depends in many instances upon the nature and character of the easement. Easements over a particular route for irrigation, drainage or the disposal of sewage, by gravity flow, may, because of the contour of the land, be more necessary to a dominant estate than a roadway or pipe line under pressure. In the former there may be but one available route, while in the latter there may be other routes capable of use. These factors, along with the presumed intention of the common grantor, furnish the principal guidance to the courts in arriving at a conclusion in a particular case.

At the trial, appellant sought to prove by Hayes, the common grantor, that he intended tract 5 should be the

roadway to serve the property on the other side of the railroad track rather than tract 3 and that when he conveyed tract 4 to Lindley he did not intend to convey to him tract 5. The court sustained objections to such testimony, and rejected an offer to prove by the real-estate agent under whose direction the original deed was prepared that it was not intended thereby to convey to Lindley an interest in the road over tract 5. Appellant contends that, where a question of intention is involved, direct testimony of such intention is admissible, citing *Anderson v. Ruberg*, 20 Wn. (2d) 103, 145 P. (2d) 890. In the *Anderson* case, the question was whether it was the intention of a grantor by placing a deed in a safe at his home to make a delivery of such deed to his wife. We stated the rule to be:

"The rule is that, where the intention of the parties to the transaction is a controlling question, either party has the right to give direct testimony as to what his intention was at the time of such transaction."

This rule would automatically exclude the offered testimony of the realtor under whose direction the deed was prepared, as he was not a party to the transaction whereby the land was conveyed. The rule of evidence is applicable when the character of the transaction depends upon the intention of the party. He may then testify what his intention was when he did the particular thing in controversy. If a grantor, when conveying a part of his land, intends that a road serving some of his retained property shall also serve that conveyed and does not express such intention in the conveyance, it would be in derogation of his grant to permit him to testify, after he had conveyed the retained property, that he intended his first grantee should have an easement over such property. He would not be testifying with reference to the character of the transaction whereby the property was sold and conveyed, but would be supplying something that had been omitted from the written instrument. The rule above quoted does not apply to such a situation. A reading of the opinion in the *Anderson* case

and our cases cited therein will make plain the distinction we make.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, HAMLEY, and WEAVER, JJ., concur.

---

August 29, 1951. Petition for rehearing denied.

