IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MELANIE J. BRYANT, a single person, | ) | |
| | ) | No. 33206-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN R. SANDBERG and ANNE D. | ) | UNPUBLISHED OPINION |
| SANDBERG, husband and wife, | ) | |
| | ) | |
| Appellants. | ) | |

FEARING, C.J. — Melanie Bryant sued her neighbor, Stephen Sandberg, to gain use of a driveway that crosses Sandberg's land. She sought an implied easement or an easement by necessity. The trial court granted Bryant summary judgment. We reverse.

FACTS

Melanie Bryant and Stephen Sandberg own adjacent properties in the rich Grant County farmland, with Bryant owning lot 1 (Lot 1) and Sandberg owning lot 2 (Lot 2) of a short plat. Each lot comprises one acre. Bryant claims an implied easement for ingress and egress across Lot 2. Because the trial court resolved the dispute on summary judgment, we draw the facts from summary judgment declarations and distinguish between those facts forwarded by the respective parties.

Stephen and Anne Sandberg, former husband and wife, and Stephen's aunt and uncle, Roberta and Gerald Trautman, originally owned both lots, and the lots were treated as one tax parcel. In 1999, Stephen Sandberg built an addition to a residence present on the property. In 2002, Sandberg built a 36-foot by 30-foot garage, with no plumbing, next to the residence.

In April, 2003, the Grant County Assessor approved the Sandberg short plat, which separated the Sandberg and Trautman property into Lots 1 and 2. The county road acts as the southern border of Lot 1, but Lot 1 has no driveway connected to the road. Upon the division of land, Lot 1 contained the residence and garage. Lot 2 connected to the county road by a thirty-foot-wide driveway. The boundary line between the two lots lies ten feet from the garage and twenty feet from the residence on Lot 1. The garage door and home front door face the boundary line and driveway. Building permits submitted for the house addition and garage may indicate access on Lot 1 is through the Lot 2 driveway.

On May 8, 2003, Roberta and Gerald Trautman conveyed their interests in Lot 1 to Stephen and Anne Sandberg. By at least 2003, the Sandbergs resided in the home situated on Lot 1. Stephen Sandberg denies that the couple drove on the Lot 2 roadway for access to the couple's garage and home on Lot 1. He contends photos show overgrowth in the area between the Lot 2 driveway and the garage on Lot 1. Sandberg testifies that the couple used the garage as his wife's craft room, but he does not

2

expressly deny that the garage was also used as a garage. According to Sandberg, the couple entered the garage through a pedestrian, rather than a car, door. Sandberg did not disclose on his affidavit from where the couple accessed the Lot 1 home, while they lived in the Lot 1 residence.

On May 31, 2007, Stephen and Anne Sandberg obtained a loan from M & I Bank, who recorded a deed of trust on Lot 1. The Sandbergs defaulted on the loan, and, on September 19, 2011, BMO Harris Bank purchased the property at the trustee's sale. Stephen and Anne Sandberg thereafter resided on the adjoining Lot 2.

On April 8, 2013, Melanie Bryant purchased Lot 1 from BMO Harris Bank. Before she purchased the property, she reviewed the lot lines. On April 15, 2014, Stephen and Anne Sandberg divorced. Stephen Sandberg continued to live on Lot 2.

## PROCEDURE

On September 5, 2014, Melanie Bryant sued Stephen Sandberg and requested that the court establish an implied easement over Sandberg's driveway so that she can drive a vehicle into her garage and more easily access the front of her house. She asked for an easement of ingress and egress over the Lot 2 roadway, whose width varies from twenty to thirty feet wide. Bryant claimed that Sandberg refused to allow her to access her property over the roadway, even though the Sandbergs employed the roadway to access the Lot 1 residence when the Sandbergs lived in the home.

Melanie Bryant filed a summary judgment motion seeking a ruling that, as a

3

matter of law, she is entitled to an easement across the Lot 2 driveway. Bryant argued that she possesses no other reasonable access to Lot 1, because her garage door and residence front door face Lot 2 and the latter lot's driveway. She contended that any other access would be impractical, unreasonable, and economically infeasible. She attached to her declaration a photograph of the back of her garage and home. The photo shows terraced landscaping in that area of the property. Presumably, Bryant contends that she would need to move her landscaping in order to gain access to her home and garage from a source other than the Lot 2 driveway. She claimed that the arrangement of the Lot 1 home and garage with the Lot 2 drive compels a finding that the Sandbergs, when residing on Lot 1, employed the Lot 2 driveway to access the home.

Stephen Sandberg filed a declaration in response to Melanie Bryant's summary judgment motion. Stephen Sandberg declared that the south end of Lot 1 borders the county road for one hundred and eighty-five feet. He impliedly argued that Melanie Bryant could construct a driveway from the county road to her garage. Sandberg noted that a photograph of the area in front of the garage shows an overgrowth of grass and weeds. Sandberg argued that Bryant can access her garage from the other side of the house and that she had already used this access for years. He contended that Melanie Bryant is not entitled to an implied easement from prior use or an easement by necessity. He testified that Melanie Bryant's boyfriend told him that the boyfriend or Bryant placed a car and boat in the garage without crossing Lot 2.

4

On summary judgment, the trial court granted Melanie Bryant the easement. The trial court reasoned that the elements for easements by necessity and implication "are not hard and fast rules." Report of Proceedings at 32. The court reasoned that the closeness of the garage and home to the boundary line of the properties shows an intent of the common grantor to allow the owner of Lot 1 to use the driveway across Lot 2.

## LAW AND ANALYSIS

We review a trial court's order granting summary judgment de novo. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). A material fact is one on which the outcome of the litigation depends in whole or in part. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). In a summary judgment motion, the burden is on the moving party to demonstrate that there is no genuine issue as to a material fact and that, as a matter of law, summary judgment is proper. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985). This court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Stephen Sandberg contends the trial court errantly resolved controverted facts at summary judgment. He argues the trial court weighed his credibility and settled factual

5

questions of prior conduct, accessibility and intent. He maintains that the trial court ignored his testimony that he and his ex-wife did not access the garage door from the driveway and this fact undermines the elements of prior use and reasonable necessity.

Melanie Bryant responds that the trial court properly granted summary judgment because the easement was reasonably necessary and implied from prior use. She argues she established the necessity because constructing a substitute driveway to access the garage is not reasonable. According to Bryant, prior use must be implied because the location of the garage and home front door shows that the parties intended vehicle access to the garage by way of the driveway. She contends the trial court considered Sandberg's statement that he did not access the garage by vehicle across the driveway, but determined that the statement alone was not enough to overcome all the other evidence in the record.

Melanie Bryant seeks an easement under two theories: (1) implied easement from prior use, and (2) easement by necessity. The names of the theories are misnomers since an implied easement requires proof of some degree of necessity and an easement by necessity is an implied easement. *Visser v. Craig*, 139 Wn. App. 152, 163, 159 P.3d 453 (2007). The trial court must be affirmed if either theory applies as a matter of law. Thus we address each discrete theory separately. Melanie Bryant presents powerful arguments, but the arguments are best reserved for trial. Material issues of fact exist for both a claim of implied easement and easement by necessity.

6

Implied Easement

The elements for establishing an implied easement are (1) unity of title and subsequent separation of title in real property, (2) apparent and continuous use of one part of the property to benefit the other, and (3) reasonable necessity that the use continue after severance of the property. *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d 664, 668, 404 P.2d 770 (1965). Unity of title is an absolute requirement. *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d at 668. One decision proclaims that the presence or absence of the second or third element is not necessarily conclusive. *Rogers v. Cation*, 9 Wn.2d 369, 376, 115 P.2d 702 (1941). Another decision reads that the first and third factors, unity of title and reasonable necessity, are essential for the creation of an implied easement. *Fossum Orchards v. Pugsley*, 77 Wn. App. 447, 451, 892 P.2d 1095 (1995). One opinion declares that the three-element rule of an implied easement "is not a hard and fast one and the presence or absence of any or all of the stated requirements is not necessarily conclusive." *Rogers v. Cation*, 9 Wn.2d at 376.

The second and third elements of an implied easement act as aids to determine the "presumed intention of the parties as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other." *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d at 668. An implied easement arises at the time of conveyance. *Visser v. Craig*, 139 Wn. App. at 161-62 (2007). Despite Washington decisional language questioning whether any one of the three elements are essential, we

7

find no decision that concludes the easement claimant may prevail on summary judgment when she only establishes, as a matter of law, one of the elements.

Here, the parties agree that Melanie Bryant satisfies the first element because Stephen Sandberg owned both lots and subsequently separated title in the lots. Sandberg does not argue that an intervening foreclosure purchaser destroyed the presence of the first element.

The party seeking the implied easement has the burden of presenting evidence of prior continuous use, the second element of an implied easement. *McPhaden v. Scott*, 95 Wn. App. 431, 438, 975 P.2d 1033 (1999). Stephen Sandberg testified that, as residents of Lot 1, he and his wife did not use the Lot 2 driveway, and Melanie Bryant presented no evidence of continuous use of the driveway for the benefit of Lot 1. We have no evidence of any use of Lot 2 by someone residing on Lot 1.

Creation of an implied easement does not require absolute necessity to fulfill the third element of an implied easement, but reasonable necessity of the use of the easement by the dominant estate. *Evich v. Kovacevich*, 33 Wn.2d 151, 157, 204 P.2d 839 (1949). The test of necessity is whether the party claiming the right can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute. *Adams v. Cullen*, 44 Wn.2d 502, 507, 268 P.2d 451 (1954). Although prior use is a circumstance contributing to the implication of an easement, if the land can be used without the easement only with disproportionate expense, an easement may be implied on the basis of

8

necessity alone. *Fossum Orchards v. Pugsley*, 77 Wn. App. at 451 (1995). In reviewing whether an easement across a neighbor's property is needed, the harm to the aesthetics of the dominant estate may be considered. *Bushy v. Weldon*, 30 Wn.2d 266, 268, 191 P.2d 302 (1948). Necessity must exist at the date the common parcel is severed. *Visser v. Craig*, 139 Wn. App. at 159 (2007).

Melanie Bryant contends that she has no other reasonable access to her property than through the Lot 2 driveway. Nevertheless, she has frontage along a public street and may have other points of access. She provided no testimony of the cost to construct other access.

Melanie Bryant argues that the present case most closely aligns with *Bushy v. Weldon*. In *Bushy*, the trial court acted as fact finder to determine that the construction of a substitute driveway was unreasonable. Here, the trial court determined the substitute garage access was unreasonable during summary judgment.

In short, the use of an easement implied from prior use is a question of fact and depends on the parties' intent, the nature of the properties, and the manner in which the parties used the easement. *Visser v. Craig*, 139 Wn. App. at 161. The location of Melanie Bryant's front door and garage and building plans are strong indicators of an intent to permit the Lot 1 owner to use the Lot 2 driveway. Nevertheless, because we lack direct evidence of earlier use of the Lot 2 driveway by a Lot 1 resident, because Stephen Sandberg denies use of the garage for storing vehicles, and because of the

9

absence of testimony of the cost of an alternative driveway, we conclude that disputed material issues of fact preclude summary judgment on Melanie Bryant's claim for an implied easement.

Easement by Necessity

The elements required for an easement implied from necessity are: (1) a landowner conveys part of his land and (2) retains part, usually an adjoining parcel, and (3) after the severance of the parcels, it is necessary to pass over one of them to reach a public street or road from the other. *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d at 666-67; 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 2.5, at 93 (2d ed. 2004). Necessity must exist at the date the property is severed. *Visser v. Craig*, 139 Wn. App. at 159 (2007). Most jurisdictions do not allow an easement by necessity to arise if there is clear evidence of the parties' contrary intent, and the majority view on easements by necessity militates against the conclusion that an easement by necessity can be imposed despite the parties' contrary intent. *Visser v. Craig*, 139 Wn. App. at 164-65. An easement by necessity is an expression of a public policy that will not permit property to be landlocked and rendered useless. *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d at 666.

Although the first two elements of an easement by necessity are easily met in this case, Melanie Bryant failed to establish that the easement over Stephen Sandberg's property was necessary. Although she presented photos showing the convenient access

10

No. 33206-3-III
*Bryant v. Sandberg*

the easement would provide, she does not establish that the easement is necessary. She could not show that her property is landlocked when it runs adjacent to the county road for 185 lineal feet. Genuine issues of fact existed as to whether Bryant was entitled to an easement by necessity.

## CONCLUSION

We reverse the summary judgment granted Melanie Bryant.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Lawrence-Berrey, J

Pennell, J.

11